THE STATE EX INF. ROBERT W. OTTO, ATTORNEY-GENERAL, v. KAN-
SAS CITY COLLEGE OF MEDICINE AND SURGERY.

Court en Banc, June 23, 1926.

1.  QUO WARRANTO: Trial by Jury.  A corporation whose right to exist is
inquired into in a **quo warranto** proceeding instituted in this court has no
right to a trial by jury.

2.  ———: Jurisdiction.  This court has original jurisdiction of a **quo war-
ranto** to oust a corporation of its franchises, and the statute (Sec. 10276,
R. S. 1919) does not confer exclusive original jurisdiction upon the circuit
court in **quo warranto** proceedings against a corporation.  Such a proceed-
ing may be instituted in the first instance in this court upon information
filed by the Attorney-General, and the evidence, if necessary, may be taken
by a special commissioner, appointed by the court, whose conclusions, while
not binding on the court, are advisory and helpful.

3.  ———: Medical School: Conducted for Private Gain.  Under the statute
relating to benevolent associations (Sec. 10271, R. S. 1919) and declaring
that "no association, society or company formed . . . for pecuniary
profit in any form . . . shall be incorporated under this article," the
franchise of a medical-school corporation which owns nothing, and is con-
ducted solely for the use and financial profit of one man, should be forfeited.

4.  ———: ———: Misuse of Franchise: Selling Diplomas: Four Years'
Course of Study.  A corporation may forfeit its franchise by misusing its
powers in a way detrimental to the public health, and a fraudulent misuse
of its powers to confer degrees will justify the dissoluti n of an educa-
tional corporation.  Where the charter of a medical school declared that
the purpose for which it was formed was to promote the study and practice
of eclectic medicine, surgery, pharmacy and dentistry in all their depart-
ments, with a preparatory school for each department, a post-graduate
study of public health, and the establishment of a hospital operated there-
with, it could conduct a six months' course of study in any branch of
medicine or surgery and not violate the law; but it is a violation of the law
to conduct a school organized under such a charter under pretense that it
was a school of four years' requirements, when it was not, and to certify
that its graduates were entitled to diplomas as medical graduates.  And
where the statute (Sec. 7332, R. S. 1919) required an applicant to practice
medicine and surgery to furnish with his application "satisfactory evidence
of having received a diploma from some reputable medical school of four
years' requirement, including two years in operative and hospital work at
the time of his graduation," and the school consisted of one man and issued
fifty or sixty diplomas, for two hundred dollars each, to persons who never
attended the school, there is such a misuse of the charter as authorizes
its forfeiture.

5.  ———: ———: ———: Honorary Degrees.  A document certifying that
a named person, "M. D., has complied with all the requirements of this
college and has passed the prescribed examinations which entitle him to a
diploma from this institution" and "we, the trustees and faculty of" a
named college of medicine and surgery, "by virtue of the authority vested
in us by the Legislature of the State of Missouri, do confer on him the
degree of Doctor **Honorary** of Medicine and Master of Surgery," is by its
terms, except for the word "honorary," a diploma, or graduating certificate,
and not an honorary degree, and its statement that the recipient "has com-

plied with all the requirements of the college and has passed the prescribed examinations," if false, is a misuse of the school's corporate franchise; and where fifty or sixty of such certificates of graduation were issued to persons who had never been students in the school, and in at least one instance to a person who had never been a student in any medical school, there is such a misuse of its corporate powers as threatens serious injury to the public welfare, and requires a forfeiture and revocation of the charter and franchise.

---

Corpus Juris-Cyc. References: Colleges and Universities, 11 C. J., Section 39, p. 1000, n. 5 New, 6, 7 New. Corporations, 14aC. J., Section 3711, p. 1107, n. 98; Section 3713, p. 1109, n. 30. Courts, 15 C. J., Section 511, p. 1078, n. 35. Juries, 35 C. J., Section 63, p. 179, n. 68. Quo Warranto, 32 Cyc., p. 1429, n. 24; p. 1445, n. 38; p. 1461, n. 94; p. 1463, n. 12.

*Quo Warranto.*

Ouster ordered.

*North T. Gentry,* Attorney-General, and *J. Henry Caruthers,* Assistant Attorney-General, for relator.

(1) A proceeding by information in the nature of *quo warranto* by the Attorney-General will lie to forfeit the charter of a corporation for exercising corporate powers without authority or for the abuse, misuse or non-use of its corporate charter. Sec. 10276, R. S. 1919; State v. Standard Oil Co., 218 Mo. 345-354. (2) Respondent corporation was organized under what is now Art. XI, Chap. 90, R. S. 1919, relating to benevolent, educational and miscellaneous associations. No association, society or company formed for pecuniary profit in any form, shall be incorporated under this article. Sec. 10271, R. S. 1919; In re St. Louis Institute of Christian Science, 27 Mo. App. 640; State ex inf. v. Rod & Gun Club, 121 Mo. App. 368. (3) The Attorney-General may institute proceedings by information in the nature of *quo warranto* against a corporation and thereby inquire into any alleged unlawful acts of or misuser or nonuser of its franchise. Sec. 10276, R. S. 1919; State ex rel. v. Board of Trustees, 175 Mo. 58; State ex inf. v. Rod & Gun Club, 121 Mo. App. 368; State ex rel. v. Men's Club, 178 Mo. App. 568; Nicholas v. Evangelical Deaconess Home, 281 Mo. 190. (4) The charter of a medical school may be revoked by the courts when it confers degrees and issues diplomas without regard to the qualifications of the applicant to practice medicine. Ind. Med. Coll. v. People, 182 Ill. 274; Ill. Health University v. People, 166 Ill. 178; Edgar Coll. Institute v. People, 142 Ill. 363; State ex rel. Attorney-General v. College Co., 63 Ohio, 341; 10 Cyc. (par. 13) 1291; 11 C. J. (par. 39) 1000. (5) It is and was the duty of respondent to comply with the terms of Sec. 7332, R. S. 1919, as amended, Laws 1923, p. 254, which requires that all persons desiring to practice medicine and sur-

gery in this State shall appear before the State Board of Health and be examined as to their fitness to engage in such practice, and "they shall furnish satisfactory evidence of having received a diploma from some reputable medical college of four years' requirements, including two years' experience of operative and hospital work at the time of graduation." (a) When a corporation is organized under a general enabling act its charter consists of the provisions of the existing State Constitution, the particular statute under which it is formed, and all other general laws which are made applicable to the corporation formed thereunder, and of the articles of association filed thereunder. 14 C. J. (par. 108) 117; State v. Cummings, 13 Mo. App. 200; State ex rel. v. Nat. School of Osteopathy, 76 Mo. App. 443; Danville v. Danville Water Co., 178 Ill. 306; Interstate Cons. St. R. v. Massachusetts, 207 U. S. 84; Westport Stone Co. v. Thomas, 175 Ind. 327. (6) A "degree" is an academic rank recognized by colleges and universities having a reputable character as institutions of learning, and is a form of expression indicative of academic rank so as to convey the idea of scholastic distinction. 11 C. J. (par. 8) 983; State ex rel. v. Gregory, 83 Mo. 130; Steinhauer v. Arkins, 18 Colo. App. 51; People v. N. Y. Hom. Med. Coll., 20 N. Y. Supp. 379. (a) An "honorary degree" is a sign or token of honor; a title which is held without rendering service. Webster's Unabridged Dictionary. (b) When respondent issued honorary degrees or diplomas it was without the authority of its faculty. Also without authority of its trustees at the time but the acts of the secretary in issuing same were subsequently ratified by a meeting of the trustees only. No faculty meeting was ever held to pass on the issuance of "honorary degrees" and the records of the school show that the faculty never passed at any time on who should receive degrees of any kind. This was violative of its charter powers. Steinhauer v. Arkins, 18 Colo. App. 51; People v. New York Hom. Med. Coll., 20 N. Y. Supp. 379.

*James R. Page* and *John V. Hill* for respondent.

(1) Respondent was entitled to the right of a trial by a jury. The request and demand for this right was timely made. "The right of a trial by jury shall remain inviolate." Section 17, Bill of Rights, Missouri Constitution, 1875. "As heretofore enjoyed" means and is construed as known and used before, under the common law. Manufacturing Co. v. Milling Co., 79 Mo. App. 153; State v. Bockstruck, 136 Mo. 335; State v. Hamey, 168 Mo. 167; Berry v. Railroad, 223 Mo. 358. The courts cannot deprive one of a trial by a jury where that right was allowed before the adoption of our Constitution. Minium v. Solel, 183 S. W. 1027; Elks Inv. Co. v. Jones, 187 S.

W. 71. At common law in England, the right of a trial by jury was uniformly accorded in all cases where a property right was involved, and it was universally held that a proceeding to forfeit the charter of a corporation involved a property right. Prior to the year 1215 the right of a trial by a jury in England was only accorded by the common law. In that year it was written into the Magna Charta that, "no free man shall be hurt, either in his person or his property, unless by lawful judgment of his peers or equals." Rex v. Bennett, 2 Strange, 995; Neville v. Paine, 1 Croke Eliz. 304 (A. D. 1582); Rex v. Francis, 2 Term Reports (King's Bench) 484; Rex v. Phillips, 1 Burrows (King's Bench) 293; King v. Carpenter, 2 Shower (King's Bench) 47; Rex v. Malden, 4 Burrows, 2135; King v. Bridge, 1 Wm. Blackstone, 47; 5 Bacon's Abridgement, 188; Bracton's Note Book, 241, 862, 1228, 1666; Keilway (King's Bench) p. 151, par. 47, 49; 1 Coke Institutes, 155b, 156a, note; Case of Abbott of Strata Marcella, 9 Coke, 24a; Attorney-General v. Farnham, Hardres (Exchequer, Eng.) 504; 3 Nelson, Abridgement, 42; 14 Petersdorf, Abridgement, 97 et seq.; 2 Coke's Institutes, 494, 496; Rex v. Higgins, Raymond T., 484; Rex v. Cambridge, 4 Burrows, 2010; Rex v. Mein, 3 Term Reports (King's Bench) 596; Angell and Ames on Corporations, sec. 741; Chapter 29, Magna Charta, 1215. Chapter 29, Magna Charta 1215, and the law of England insofar as they are not repugnant to or inconsistent with our Constitution, or have not been amended by our Legislature, are now and have been the law of this State since January 19, 1816. Sec. 7048, R. S.. 1919. In a case decided in 1731 a rule was granted to show cause why an information in the nature of *quo warranto* should not go against the defendant. His counsel asked the court to determine the point on the rule and not put defendant to the expense of a jury trial, but the court made the rule absolute, thinking it fit to have the question of fact determined by a jury. King v. Pool, 2 Barnard, 93. In King v. Clark, 1 East (King's Bench) 38, the court said: "The question is put too much '*in dubio*' by the affidavit by either side for the court to say that it is not proper to be inquired into by a jury." Similar remarks were made in the case of Clark v. Bingham, 2 East, 308. It was the universal and uniform rule in *quo warranto* proceedings at common law, brought to vacate, or forfeit charters of corporations, to accord the respondent a trial by jury to determine the facts, and the great weight of authority in America is to that effect. People v. Sackett, 14 Mich. 243; People v. Albany Railroad Co., 57 N. Y. 161; People v. Doesburg, 16 Mich. 133; Harbaugh v. People, 33 Mich. 241; State v. Norton, 46 Wis. 332; State v. Burnett, 2 Ala. 140; Lee v. State, 49 Ala. 43; Commonwealth v. Woelper, 3 Serj. & Rawle, 29; Commonwealth v. Smith, 45 Pa. 59; State v. Funck, 17 Iowa, 367; State v.

Norwalk Turnpike Co., 10 Conn. 157; People v. Cicott, 15 Mich. 326; State v. Messmore, 14 Wis. 115; State v. Foster, 32 Kas. 14, *ex gratia;* Paine on Elections, sec. 903; Reynolds v. State, 61 Ind. 392; Wood, Mandamus & Quo Warranto, p. 234; High, Extr. Legal Remedies, secs. 740, 741; People v. Richardson, 4 Cowan, 97, 100, note; State v. Addison, 6 Wall. 291; Van Dorn v. State, 34 Fla. 62; Donnelly v. People, 11 Ill. 552; Wight v. People, 15 Ill. 417. The latest case decided in this State in an opinion written by Judge FARIS in which this question was thoroughly discussed, Judge FARIS said: "The personal views of the writer are that present a timely request for a jury in the trial of an information in the nature of *quo warranto,* having for its object the forfeiture of the franchise or the confiscation of the whole or a part of the property of a corporation, such request ought to be granted and the case sent down to a circuit court to be tried by a jury on issues of fact framed by this court." This opinion was concurred in by LAMM, C. J., and GRAVES, BOND and WALKER, JJ. State v. Arkansas Lumber Co., 260 Mo. 212. (2) The court erred in striking out portions of respondent's answer and thereby depriving it of the right to show the real facts in connection with the purposes for which the school is being conducted, and whether or not the present condition of the school is caused by this respondent, or the wrongful and malicious acts of the agents of the State who are seeking to forfeit its charter. (3) Information in the nature of *quo warranto* will lie to forfeit the charter of a corporation. Sec. 10276, R. S. 1919. The relator, however, refused to bring itself within the provision of this statute; refused to comply with the provisions of the statute; refused to file its information in the county in which the corporation was organized, and this court upheld relator in its refusal, and denied respondent the rights given to it under this section of the statute. (4) To forfeit a corporate franchise it must be shown either that some law has been violated, or to forfeit for misuser it must be shown that the facts complained of are detrimental to the public welfare or that they work or threaten substantial injury to the public, or amount to the violation of the purpose for which the corporation was organized. State ex rel. v. Mens Club, 178 Mo. App. 548. (5) The burden of proof in this case rests upon relator. State ex rel. Walker v. Talbor, 123 Mo. 69. (6) Section 10272 is upon its face for the benefit of the members of the corporation. Forfeiture of the charter of a corporation will not be adjudged for the violation of a statute for its internal government. 10 Cyc. 1279, par. D. (7) The charter states the purpose, and the actual graduating of more than two hundred and forty students, in face of the terrific fight being made by the American Medical Association, shows that respondent faithfully carried out the purpose for which it was organ-

ized. (8) The issuing of an "Honorary Degree" is not in violation of any law of this State, and is in no way detrimental to the public welfare, and does not threaten a substantial injury to the public welfare or violate the purpose for which the corporation was organized. (9). Corporation did not operate for pecuniary profit. Nicholas v. Evangelical Deaconess Home, 281 Mo. 191. (10) States cannot prescribe what may or may not be taught, or the way or place in which teaching shall be done, so long as what is taught is not inherently wrong. Pierce v. Holy Name of Jesus and Mary, Sup. Ct. Rep. 571.

WHITE, J.—The relator filed in this court an information in the nature of a *quo warranto* seeking to oust the respondent from enjoying the powers and privileges of a corporation.

The relator sets out several alleged reasons why the corporate franchise of the respondent should be forfeited. The important ones of these may be summarized as follows:

(a) That it keeps no intelligible record of its proceedings as a college.

(b) That although the respondent (under what is now Article XI, Chapter 90, Revised Statutes 1919) was organized as a corporation for benevolent purposes, it is conducted for private profit and gain, contrary to the law of its incorporation.

(c) That for purely monetary considerations respondent is and has been engaged in the sale of diplomas an certificates of graduation without regard to the educational qualifications or fitness of those who receive them.

(d) That the instructors in defendant's school are selected from the student body and are wholly incompetent to perform the functions and duty of teaching and giving scientific instruction necessary in a medical school.

(e) That the respondent does not maintain a properly organized curriculum covering four years' instruction which is essential for a medical school of four years' requirement, as provided by statute.

(f) That respondent, for the purpose of instruction has not provided any dispensary or any hospital where patients are received and treated and where the students may receive instruction.

(g) That one of the avowed purposes of the maintenance of the corporation as a benevolent institution is to escape the lawful payment of taxes.

Other alleged misuses of corporate powers mentioned are more or less a repetition of those enumerated.

Upon the filing of the information this court issued an order upon respondent to show cause why it should not forfeit its charter for the misuse of its powers, which order was served upon respondent June 22, 1925.

Respondent filed in this court, July 20, 1925, a demand for trial by jury and, for that purpose, transfer of the cause to the Jackson County Circuit Court. The motion was overruled August 4, 1925. Respondent filed its answer July 20, 1925, in which it denied generally and specifically the allegations of the information, and set up matters of defense, some of which were later stricken out on motion. What remains of the answer consists of general and specific denials of the charges contained in the information, together with some statements of evidence upon the issues.

This court, July 31, 1925, appointed Honorable Edwin J. Bean, of St. Louis, special commissioner, to take the testimony and report on the law and the facts in the case. The commissioner took a large volume of evidence, and March 6, 1926, filed his report, in which he made a finding of the facts and stated his conclusions of law sustaining the essential charges preferred by the Attorney-General.

The articles of agreement by which the respondent was organized were entered into January 5, 1916. This document recited that the signers desired to found a corporation under the provisions of Article X, Chapter 33, Revised Statutes 1909 (Art. XI, Ch. 90, R. S. 1919); that the name of the institution should be the Kansas City College of Medicine and Surgery; that the purpose for which it was formed was to promote the study and practice of "eclectic" medicine, surgery, pharmacy and dentistry in all their departments, with a preparatory school for each department, a post-graduate course of study of public health, and the establishment of a hospital operated therewith, etc. Charles A. Gilman, president, D. R. Alexander, secretary, and Edward H. Clark, treasurer, were the first board of directors. The articles were signed by those three men. The incorporators then applied to the Circuit Court of Jackson County for a *pro forma* decree of incorporation, and the court January 13, 1916, entered an order incorporating the Kansas City College of Medicine and Surgery.

The evidence shows that Dr. Alexander, the nominal secretary of the institution, was in fact the institution. He was business manager, handled all the funds, collected and disbursed all money paid to the institution. The management and control of the respondent's affairs were at all times in his hands. The corporation had no bank account. The laboratory man received one hundred dollars a month, and lived in the institution. The treasurer lived in the institution, and was supposed to receive fifty dollars a month, but it was seldom paid to him, and he handled none of the money of the institution. At the time of the hearing the institution owed him about six thousand dollars, according to Dr. Alexander. Dr. Alexander himself received all the money and put it into his pocket after defraying the expenses incurred. So far as the books of the institution showed,

none of the money was ever paid out for equipment in the conduct of the college except one item for a tank that cost seventy dollars.

Dr. Frederick C. Waite, representing the American Medical Association, inspected respondent's school and testified in the case. Dr. Alexander said to him: "I am the school."

The curriculum was nominally a four years' course, but what is called a repetitive curriculum: the work of the junior and senior years were the same and were combined. It was not a school of four years' requirement. There was no hospital connected with the school, and no dispensary. Alexander said that a hospital was under construction, and that the students could go to other hospitals on their own initiative, but as far as he knew, and so far as required, men who graduated had never seen a sick patient. The evidence showed that proper hospital experience was necessary in a proper medical education. Dr. Waite swore that on one occasion Dr. Alexander said he knew he was not running a medical school.

Dr. Alexander was charged with the sale of diplomas, and a few examples will illustrate his method: Clarence L. Hobbs graduated from the St. Louis College of Physicians and Surgeons in 1922. A graduation from that school did not entitle him to examination for a license by the State Board of Health of Missouri, nor by the Board of Health of Connecticut. Hobbs desired to practise medicine in Connecticut, and Alexander told him that he would arrange it so that Hobbs could take the Connecticut board examination. He accomplished this by granting to Hobbs an honorary degree from the Kansas City College of Medicine and Surgery. With that diploma Hobbs passed an examination and received license to practice medicine in Connecticut. The so-called honorary degree or diploma thus issued to Hobbs was in this form:

"KANSAS CITY COLLEGE OF MEDICINE AND SURGERY, KANSAS CITY, MISSOURI.
"Know all men by these presents: That .................., M. D., has complied with all the requirements of this college and has passed the prescribed examination which entitles him to a diploma from this institution, therefore, we, the trustees and faculty of the Kansas City College of Medicine and Surgery, of Kansas City, Missouri, by virtue of the authority vested in us by the Legislature of the State of Missouri, do confer on him the degree of Doctor
HONORARY
in Medicine and Master in Surgery, with all the privileges and immunities thereunto belonging in this or any other country:
"IN TESTIMONY WHEREOF', we do hereunto affix our seal and signatures, dated at Kansas City, Missouri, this ninth day of June, A. D. MCXXII.
    (Signed) "R. O. RHODES, M. D., President.
           "D. R. ALEXANDER, M. D., Secretary.
           "E. E. HUBBARD, M. D., C. M., Dean."
Seal of:
"Kansas City College of Medicine and Surgery—Corporate Seal."

Hobbs testified that the word "honorary" was not in there when he received the diploma. He put it in himself. He copied it from the diploma of his brother Alonzo G. Hobbs; the term, however, was engrossed at the direction of Dr. Alexander.

This document certifies that —————— M. D., *"has complied with all the requirements of this college and has passed the prescribed examination which entitles him to a diploma from this institution."* Except for the word "honorary" it is in terms a diploma, and not an honorary degree.

Alonzo G. Hobbs, brother of Clarence L. Hobbs, also graduated from the St. Louis School of Physicians and Surgeons, and bought a like honorary degree from Alexander. This diploma was delivered to Alonzo G. Hobbs in St. Louis. Clarence L. Hobbs paid Alexander $250 for his honorary diploma. Alonzo G. Hobbs paid $150 for his.

One William P. Sachs was employed by Leroy Combs to obtain for Combs a medical diploma from respondent's school. Combs lived in Connecticut. Sachs knew Alexander. In March, 1923, Sachs went to Kansas City to see Alexander and told him that Combs would give him $250 for a diploma from Alexander's school. Alexander said the price was $500. Sachs gave Alexander $250 in cash, and his own check for $250, assuming that Combs would repay him that amount. Dr. Alexander told Sachs that he never delivered a diploma to anyone other than the one to whom it was issued. He requested Sachs to have Combs meet him at Hotel Gard, New Haven, Connecticut, where he would deliver the diploma to Combs. Combs, however, refused to pay $500 for the diploma. In that case there was no evidence to show that Combs ever had attended respondent's school, or any other medical school. Alexander did not inquire if Combs had previously attended a medical school. In November, 1924, Sachs saw by the record of the State Board of Health of Connecticut that Combs had a license to practice medicine in that State,

Dr. R. Adcox was produced as a witness. He knew Alexander and testified that he talked to Alexander about degrees and diplomas; he had seen diplomas issued by Alexander's school. One such diploma was held by a man named Hull, who graduated from the St. Louis school in 1917 or 1918. Hull came to him with Ralph Voight, who brought the honorary diploma. The word "honorary" on that diploma was written in with pen and ink, but Voight, when he brought the diploma from Kansas City, erased the word "honorary" before he delivered it to Hull. After the erasure it appeared the same as a senior graduating diploma. Hull desired to get a license from the Connecticut board, and he was obliged to have an eclectic diploma and that was the kind that Voight got for him. He paid $500 for it. There is nothing in the evidence to show that Alexander

ever saw Hull, or that Hull ever was in the Kansas City school. Alexander did not deny any of the testimony in connection with these honorary diplomas.

Dr. Waite also testified that Alexander admitted to him that he sold Doctor of Divinity degrees. He mentioned one case where Alexander said a rascal came to him and wanted to be a Doctor of Divinity. The applicant said he had bought out a Sunday-school publishing business, and if he had a Doctor of Divinity diploma hanging over his desk it would help him to get business. Alexander made him Doctor of Divinity and explained: "But I stung him $300."

Dr. Alexander told Dr. Waite, so the latter testified, that he sold honorary degrees or diplomas for a minimum price of $200, but that the notoriety was improving the situation and he was going to charge more. He admitted that the money he received for those diplomas he put into his pocket; he considered it his personal perquisite.

Dr. Stratton D. Brooks, of the University of Missouri, who had had wide experience as an educator with medical and other schools, testified that medical schools do not issue honorary degrees, and that honorary degrees by schools entitled to issue them are not paid for.

I.   Although the respondent's demand for a jury to try the case was overruled by this court before the argument on the merits, he still insists that a constitutional right has been denied him, for which he should be discharged and the proceeding dismissed. The previous holdings are against the position of the respondent. This court, having original jurisdiction in *quo warranto* proceedings, has uniformly held that a corporation whose right to exist is inquired into in a *quo warranto* proceeding has no right to a trial by jury. [State ex rel. v. Vail, 53 Mo. l. c. 107; State ex inf. v. Arkansas Lumber Co., 260 Mo. l. c. 275.] In those cases this court explained the reason for denial of the right to jury trial. Many other cases by this court have announced the same doctrine.

Respondent claims that under Section 10276, Revised Statutes 1919, the proceeding should have been instituted in the county where the corporation was organized. If that were so only the Circuit Court of Jackson County would have jurisdiction of the case. That section does not confer exclusive original jurisdiction in *quo warranto* proceedings against a corporation. [State ex rel. v. Social Club, 169 Mo. App. l. c. 147.] Such proceeding may be instituted in the first instance in this court by information filed by the Attorney-General. [State ex rel. v. Board of Trustees, 175 Mo. l. c. 58; State ex rel. v. Men's Club, 178 Mo. App. 548.]

The conclusions of the commissioner are not binding on this court, but they are advisory and helpful.

II.   Section 10271, Article XI, Chapter 90, Revised Statutes 1919, relating to benevolent associations, provides: "No association, society or company formed for manufacturing, agricultural or business purposes of any kind, *or for pecuniary profit in any form,* nor any corporation having a capital stock divided into shares, shall be incorporated under this article."

That provision of the statute was violated, warranting the forfeiture of the franchise of the respondent. The building in which the school was operated was owned by the Eclectic Building Company, which also owned the apparatus; the school paid rental for the use of the building and apparatus. The school owned nothing. The Eclectic Building Company had five hundred and twenty shares of stock. Dr. Alexander owned one share, Dr. Beebe owned one share, and the janitor owned one share; five hundred and sixteen shares stood in the name of Leroy Overly, Alexander's step-father. Alexander really owned those shares.

The evidence summarized above justifies the conclusion that Dr. Alexander conducted the school solely for his own private gain. [State ex inf. Hadley v. Meramec Rod & Gun Club, 121 Mo. App. 364.]

III.   Section 7332, Revised Statutes 1919, as amended in Laws 1923, page 254, requires an applicant desiring to practice medicine and surgery in the State in presenting his application to the Board of Health to "furnish satisfactory evidence of having received a diploma from some reputable medical school of four years' requirement, including two years in operative and hospital work at the time of graduation."

In 1921 the Legislature amended the statute by striking out the word "reputable." In 1923 the statute was again amended by restoring the word "reputable."

. The evidence shows that the Board of Health of the State of Missouri never regarded the respondent's school as a reputable school. No license to practice medicine was ever issued to anyone presenting a diploma from that school except while the word "reputable" was omitted from the law.

It is earnestly argued by respondent that even if the Kansas City College of Medicine and Surgery did not furnish a school of four years which the statute provides for, nevertheless it was a perfectly lawful school; that its charter did not require it to maintain a perfect curriculum. That it could, if desired, teach nothing but anatomy, or nothing but chemistry, etc.; could conduct a six months'

course in any branch of medicine or surgery and it would be no violation of the law.

True enough, such a school could lawfully be conducted, but it would be violation of the law to conduct it under pretense that it was a school of four years' requirement, and to certify that its graduates were entitled to diplomas as medical graduates. There was evidence to show that the respondent had issued fifty or sixty diplomas for $200 each to persons who never attended the school. A corporation may forfeit its franchise by misuse of its powers in a way detrimental to the public welfare. We can imagine no more serious injury to the public than the issuance of degrees to practice medicine to persons wholly unqualified to treat the sick. [Independent Medical College v. People, 182 Ill. 274; State ex rel. Attorney-General v. College Co., 63 Ohio St. 1. c. 341.] A fraudulent misuse of its powers to confer degrees will justify the dissolution of an educational institution. [11 C. J. 1000.]

The respondent's counsel in their brief deny that there was any sale of diplomas or certificates of graduation. They argue that the school had a right to issue honorary degrees and receive money for them. The word "honorary" is not a part of such diploma, but is written in upon the ordinary graduating certificate. It states that the recipient has complied with all the requirements of the college and has passed the prescribed examinations; a bare falsehood. That is equivalent to saying that the student receiving the degree has graduated from the school. Otherwise, how could he comply with the "prescribed requirements" which entitle him to a diploma from the institution? Fifty or sixty of these were issued to students who never had been in the school, and the evidence shows at least one instance where a diploma was issued to a student who was not shown to have been in any medical school. The instrument is not an honorary degree, but a diploma to a Doctor of Medicine and Master of Surgery. It was strictly a sale of diplomas.

The evidence satisfactorily shows that the respondent has violated the law of its organization in at least two respects: It has been conducted for pecuniary profit, which that law forbids. It has misused its corporate powers in a manner which threatens serious injury to the public welfare.

Wherefore, it is ordered that the respondent, the Kansas City College of Medicine and Surgery, be dissolved as a corporation, and that its charter and franchise as hereinbefore granted be forfeited and revoked and for naught held, and that the relator herein recover of and from respondent the costs herein laid out and expended. All concur, except *Otto, J.*, not sitting.