STATE of Missouri, Respondent,

v.

UNITED FRATERNAL ORDER OF PEACE OFFICERS ASSOCIATION, INC., Appellant.

No. KCD 29871.

Missouri Court of Appeals, Western District.

Sept. 4, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 1979.

Application to Transfer Denied Nov. 14, 1979.

Robert G. Duncan, Duncan & Russell, Kansas City, for appellant.

John D. Ashcroft, Atty. Gen., Hugh F. O'Donnell, Asst. Atty. Gen., Kansas City, for respondent.

Before DIXON, P. J., and TURNAGE and KENNEDY, JJ.

TURNAGE, Judge.

The State at the relation of the Attorney General filed an information in the nature of a quo warranto by which it sought the forfeiture of the right of United Fraternal Order of Peace Officers Association, Inc., to do business in this State. The court dissolved all of the corporate rights, privileges and franchises of Peace Officers in this State and appointed a receiver to take charge of its affairs.

On this appeal Peace Officers contend there was insufficient evidence to support the court's judgment. Affirmed.

Peace Officers was first incorporated as a not for profit corporation in the District of Columbia in June, 1972, by Rose Mary Evans; Glen W. Evans, her husband; and Myer Koonin. Among the purposes of the corporation was (a) to make safe and secure the streets of cities throughout the United States; (b) to recruit students for education and training programs; (c) to recruit and assist in placement of volunteers to work with the corporation; and (d) to serve as a communications clearing house to publicize worthwhile activities and to issue a newsletter and other publications.

In February, 1973, the Secretary of State of Missouri issued a certificate of authority under Chapter 355, RSMo 1969, authorizing United Fraternal Order of Peace Officers Association as a foreign corporation to do business as a not for profit corporation in

Missouri. The stated purposes of the corporation were identical with the purposes stated in the original incorporation in the District of Columbia.

In September, 1976, the Attorney General filed an information in the nature of a quo warranto seeking to forfeit the right of Peace Officers to do business in Missouri. The information alleged none of the corporation's activities or funds had been directed or expended to accomplish the purposes set forth in its application to do business in Missouri, but, in fact, its activity and funds had been directed and expended for the use and benefit of the officers and directors of the corporation in excess of reasonable compensation for services rendered. The information also alleged misrepresentation on the part of telephone solicitors working for the corporation in soliciting ads for a yearbook when they stated the proceeds from the publication would be used to pay death benefits for police officers killed in the line of duty.

The evidence revealed that Glen W. Evans and Rose Mary Evans established an office for Peace Officers in Gladstone. The principal activity carried out by the Evans was the employment of a number of telephone solicitors who solicited both in the metropolitan Kansas City area and by WATS line to other areas for ads to be carried in a Peace Officers yearbook. Glen acted as a telephone solicitor and Rose Mary principally handled the office routine. In addition, there were bookkeepers and accountants who kept the books but Rose Mary was the only person authorized to write checks. Until early 1977 the telephone solicitors stated the proceeds from the ads were used to pay death benefits for police officers who were killed in the line of duty.

About 1974, the Evans established Fortune Enterprises as an unincorporated entity. Rose Mary said Fortune was established to handle the publication of the yearbook and to pay the expenses connected therewith. Telephone solicitors were paid 25% of the amount of ads they sold and collectors were paid 20% of the amount they received in picking up ad payments.

The Evans also operated two other organizations: The United Fraternal Order of Fire Fighters and The Future Fire Fighters of America. Yearbooks were published for these organizations in addition to the Peace Officers Yearbook. The telephone solicitors solicited ads for each yearbook. A yearbook was published for Missouri and apparently other yearbooks were published in other parts of the country. The Peace Officers Yearbook for 1975 was published in paperback and consisted of 224 pages. The entire book consisted of box ads which simply gave the name and address of various businesses in Missouri. There were a few articles reprinted from other publications, but the only original literary effort was two messages from Rose Mary Evans. There was nothing in the yearbook which would assist any peace officer in the performance of his duty which was not readily available from other sources. There was no evidence as to how many yearbooks were published.

To demonstrate the success of the operation, Fortune Enterprises received $189,014.58 in revenue for ads to be placed in the 1975 Peace Officers Yearbook. There is no evidence when the 1975 yearbook was published, but Rose Mary said the yearbooks were always at least a year behind and at trial in 1977 stated the 1976 yearbook was at the printers. The expenses for the 1975 yearbook were not shown but Fortune paid Peace Officers about 5% of the amount it received, or $9,415 in royalties. Rose Mary said the amount of royalty paid Peace Officers was fixed by her accountant and she disclaimed any knowledge of how he arrived at the percentage. The accountant did not testify.

For the first ten months of 1976 Fortune received $196,800 from Peace Officers ads and incurred $159,000 in expenses. The amount of royalty to be paid Peace Officers for the 1976 yearbook had not been determined by the accountant at the time of trial.

Glen Evans died in 1976. It is a fair inference from the evidence that both before and after the death of Glen, the Evans

placed all of the revenue received from ads in a bank account controlled by Fortune Enterprises. Money was in turn placed in bank accounts for the Peace Officers and Fire Fighters, but Rose Mary was the only person who wrote checks on those accounts and frequently wrote checks for personal expenses on the Peace Officers account as well as shifted money from one account to another as she might need money in a particular account. Rose Mary stated she had no set salary but simply wrote checks for her personal needs on any of the bank accounts which had money in them and noted on the check it was personal. Her needs at one time included payments on her Lincoln Mark IV.

Rose Mary stated none of the board of directors of Peace Officers was active in the organization. No meeting of the board of directors nor of the membership appears to have been held. It was stipulated at trial that in 1977 there were 101 members of Peace Officers who had paid the yearly dues of $11. Of this, only 9 were from Missouri.

There was evidence that Peace Officers paid $500 in 1973 to Johnson County, Kansas, for a drug program, and in 1975, Fortune paid $625 in death benefits for a police officer and this amount was later repaid from the Peace Officers account. In 1976, $850 was paid from the Peace Officers account for death benefits. Those were the only sums paid in death benefits.

In September, 1973, Glen and Rose Mary purchased property in St. Clair County near Osceola for the stated purpose of establishing a Peace Officers Hall of Fame and recreational area. The title to the property was taken in the names of Glen and Rose Mary and the purchase price of $9,456.71 was paid by Fortune. It was only after the information herein was filed that Rose Mary conveyed title to Peace Officers to part of the property and the remainder to Fire Fighters. Peace Officers paid Fortune $7,987.93 toward the purchase price.

It is more than apparent that the Peace Officers Corporation was operated solely by the Evans for the purpose of selling advertising in a yearbook to make a profit for themselves. The advertising was sold on the representation the proceeds would go for the benefit of police officers, but, in fact, the corporation received only such amount as Rose Mary or her accountant arbitrarily determined. In addition, neither the membership nor the board of directors of Peace Officers functioned and the affairs of the corporation were solely in the hands of Rose Mary. As the only authorized person to write checks, she wrote checks from any bank account for any purpose, including her own personal needs. In fact, the corporate existence of Peace Officers appears to have been nothing more than a ruse skillfully utilized by the Evans to raise money for their own purpose. Any money expended for the corporate purposes was purely incidental and only in a minimal amount. This court concludes from the evidence the true purpose in establishing corporation was to serve as a vehicle for the Evans to solicit ads from unsuspecting businesses who thought they were assisting police officers and their families when, in fact, the money was used only as Evans directed.

Section 355.340 subjects foreign not for profit corporations who obtain authority to do business in this State to the same duties, restrictions, penalties and liabilities as that imposed upon domestic not for profit corporations. Section 355.025 prohibits any organization created for or engaged in business for profit to be organized under the not for profit corporation law. Section 355.490 permits the circuit court in any county in which the registered officer of any corporation organized under the not for profit corporation law is located to inquire into any alleged unlawful acts or misuse of the franchise of such corporation, upon proceedings by information in the nature of quo warranto.

In *State v. Kansas City College of Medicine and Surgery*, 315 Mo. 101, 285 S.W. 980 (banc 1926) the court found the evidence justified the conclusion that a medical school organized under the not for profit corporation law was conducted solely for the private gain of one of the officers of the

school. The court held that the fact the school had been conducted for pecuniary profit violated the law under which it was incorporated and that justified the forfeiture of its charter and franchise. In *State v. St. Louis College of Physicians and Surgeons*, 317 Mo. 49, 295 S.W. 537 (Mo. banc 1927) the court held that the school was conducted by its officers and agents primarily for pecuniary profit and this constituted a breach of the school's contract with the State pursuant to its incorporation under the not for profit act and was sufficient cause to forfeit its charter.

There can be no doubt the Peace Officers Corporation was operated by the Evans for their own pecuniary benefit in violation of the not for profit corporation law and this justified the court in dissolving the corporate rights and franchises of the United Fraternal Order of Peace Officers in Missouri.

The judgment is affirmed.

All concur.